## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

LONNIE LAURENT                                  **CIVIL ACTION**

**VERSUS**                                           **NO.  10-1175**

**ROBERT TANNER, WARDEN**                 **SECTION "N"(2)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Lonnie Laurent, is incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  Laurent, and a co-defendant, Monroe Laurent Sr., were charged by bill of information in St. Tammany Parish on August 2, 2004, with two counts of distribution of cocaine.[3]  The State filed an amended bill of information on March 22, 2005, charging Monroe Laurent with two counts of distribution of cocaine, and charging both Monroe Laurent and Lonnie Laurent with one count of attempted distribution of cocaine, one count of distribution of cocaine and one count of possession with intent to distribute cocaine.[4]   The Louisiana First Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> On or about May 5, 2004, Detective Justin Gibson of the Slidell Police Department worked undercover to conduct drug transactions at the residence of Monroe Laurent (the defendant's cousin) in Lacombe, Louisiana.  Detective Gibson was equipped with a digital audio recorder and an audio transmitter.  Other officers waited at a nearby location as Detective Gibson approached Monroe Laurent regarding the purchase of "hard" (crack) cocaine at approximately 6:40 p.m.  Detective Gibson also inquired about the purchase of "soft" (powder) cocaine.  Regarding the purchase of powder cocaine, Monroe told the detective that someone named "Lonnie" could obtain it for him.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 3 of 6, Bill of Information, 8/2/04.

[4]St. Rec. Vol. 3 of 6, Bill of Information, 3/22/05.  The record contains a third bill of information dated November 30, 2005, which purports to add an additional count of distribution of cocaine against Lonnie Laurent.  The record is not clear as to what happened to this bill of information, and it was not the one used at trial.

Monroe introduced Detective Gibson to Lonnie, and Detective Gibson gave Lonnie forty dollars for the purchase of powder cocaine. Lonnie rode his bicycle onto a trail located in a nearby wooded area to a house behind the property where they were located. When Lonnie came back a short time later, he returned the money, and told Detective Gibson that the source of his supply for the powder cocaine was out.

On June 4, 2004, at approximately 3:20 p.m., Detective Gibson returned to Monroe's residence, again undercover. Detective Gibson observed Lonnie sitting in an inoperable van smoking what appeared to be crack cocaine. As Detective Gibson questioned Lonnie regarding the purchase of cocaine, Monroe approached them. The three individuals discussed Detective Gibson's proposal to purchase $60 worth of powder cocaine. Detective Gibson gave Lonnie the money, Lonnie obtained the cocaine, and the transaction was completed. Later that day, Detective Gibson seized powder cocaine and a small scale from the inoperable van during the execution of a search warrant. The defendant was present at the scene at the time of the execution of the search warrant. Detective Gibson identified the defendant as the "Lonnie" who participated in the attempted transaction on May 5th and the completed transaction on June 4th.

State v. Laurent, 966 So.3d 826, 2007 WL 2782836, at *1 (La. App. 1st Cir. 2007) (Table, Text in Westlaw); State Record Volume 2 of 6, Louisiana First Circuit Opinion, 2007-KA-0324, pp. 2-3, September 26, 2007.

Lonnie Laurent was tried before a jury on May 1 and 2, 2006, on the three counts asserted against him in the amended bill of information.[5] He was found guilty as charged on all three counts.[6]

---

[5]St. Rec. Vol. 3 of 6, Trial Minutes (5 pages), 5/1/06; Trial Minutes (6 pages), 5/2/06; see St. Rec. Vol. 4 of 6, Trial Transcript Volume II, p. 213, 5/2/06.

[6]St. Rec. Vol. 3 of 6, Trial Minutes (6 pages), 5/2/06; Jury Verdict, 5/2/06; St. Rec. Vol. 5 of 6, Trial Transcript Vol. II (continued), 5/2/06.

On May 3, 2006, the State filed a multiple bill charging Laurent as a second offender in connection with the distribution of cocaine count.[7]  After finding him a second offender, the state trial court sentenced Laurent on June 6, 2006, to concurrent sentences of 10 years at hard labor as to each count for attempted distribution of cocaine and for possession with intent to distribute cocaine, and 25 years without benefit of probation or suspension of sentence, as a multiple offender for distribution of cocaine.[8] The court also denied Laurent's pro se motion to reconsider the sentences.[9]

On October 9, 2006, a public defender filed on Laurent's behalf an application for post-conviction relief seeking leave to file an out-of-time appeal.[10]  The state trial court granted the request.[11]  The court also later granted Laurent's pro se motion for leave to appeal.[12]

On appeal, Laurent's counsel raised two assignments of error, one challenging the sufficiency of the evidence to establish him as the perpetrator and the other arguing that

---

[7]St. Rec. Vol. 3 of 6, Multiple Bill, 5/3/06.

[8]St. Rec. Vol. 3 of 6, Multiple Bill Hearing Minutes (3 pages), 6/30/06; Reasons for Judgment, 7/17/06; St. Rec. Vol. 5 of 6, Multiple Bill Hearing Transcript, 6/30/06.

[9]St. Rec. Vol. 3 of 6, Motion for Reconsideration of Sentence-Resentence Hearing, 7/24/06 (dated 7/21/06); Trial Court Order, 10/19/06.

[10]St. Rec. Vol. 3 of 6, Application for Post Conviction Relief for Out-of-Time Appeal, 10/9/06.

[11]St. Rec. Vol. 3 of 6, Trial Court Order, 10/13/06.

[12]St. Rec. Vol. 3 of 6, Motion for Appeal, 10/27/06; Trial Court Order, 11/2/06.

the multiple offender sentence was excessive.[13]  With respect to the first ground, counsel argued that the evidence was insufficient (a) to negate the possibility of misidentification based on Laurent's prior involvement with area police and (b) to prove actual or constructive possession of the cocaine.   Counsel also argued that there were discrepancies in the testimony about the transaction dates and the value of the cocaine, which diminished the reliability of the officer's testimony.  The Louisiana First Circuit affirmed, finding both claims without merit.[14]

The Louisiana Supreme Court denied Laurent's subsequent writ application on March 7, 2008, without stated reasons.[15]  Laurent's conviction became final 90 days later, on June 5, 2008, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[13]St. Rec. Vol. 2 of 6, Appeal Brief, 2007-KA-0324, 3/27/07.

[14]State v. Laurent, 966 So.3d at 826, 2007 WL 2782836, at *1; St. Rec. Vol. 2 of 6, 1st Cir. Opinion, 2007-KA-0324, 9/26/07.  One judge entered an opinion concurring in part and dissenting in part on the sufficiency of the evidence related to the possession with intent charge.

[15]State v. Laurent, 977 So.2d 898 (La. 2008); La. S. Ct. Order, 2007-K-2074, 3/7/08.  The State failed to provide the Court with a copy of the writ application in spite of its duty to do so.

In the meantime, on May 24, 2008, Laurent submitted an application for post-conviction relief to the state trial court raising three grounds for relief:[16] (1) The conviction and sentence were contrary to the Constitution and obtained without a fair trial. (2) Counsel provided ineffective assistance. (3) The evidence was insufficient to support the multiple offender adjudication, and the sentence was improper.

Laurent argued in support of the first claim that the prosecutor and the sheriff conspired to use Monroe Laurent to involve him in the drug transactions. He alleged that he was subjected to malicious prosecution because the State amended the bill of information to add additional charges, about which he was not notified or arraigned and for which he could not properly prepare to defend at trial. He also argued that the prosecutor inflamed the jury to prejudice the defense during his comments about Laurent's character during his argument.

Laurent also argued that the powder cocaine involved in his trial was never analyzed and never proven to be cocaine or a sufficient quantity to support the charges. In his supplemental memorandum, he argued based on the dissent on his direct appeal that the evidence was insufficient to prove that he possessed cocaine in a sufficient quantity to have intent to distribute. He also argued that the prosecutor manipulated the

---

[16]St. Rec. Vol. 2 of 6, Uniform Application for Post-Conviction Relief, 5/27/08 (dated 5/24/08); Supplemental Memorandum, 6/6/08 (dated 6/3/08).

6

jury into believing that the cocaine related to Monroe Laurent's crimes was sufficient to link him to the drug transactions.  He asserted that his confrontation rights were violated because he was not allowed the opportunity to confront the voice on the tape recording, whom the officer identified as Monroe Laurent and who identified Lonnie.  Laurent argues that the voice could not have been Monroe Laurent because Monroe never called him "Lonnie" but instead referred to him as "4 barrel."  He also argued that the tape was inadmissable hearsay.

In support of his second claim, Laurent argued that his counsel was ineffective for failure to subpoena Monroe Laurent at trial to discuss the nickname "4 barrel."  He also complained that counsel failed to seek a ruling on motions to suppress the evidence, confession and identification and the motion for a preliminary examination.  Laurent argued that his counsel must have waived the motions, and the record does not contain any pre-trial resolution of the motions. He claimed that had counsel pursued these motions, the state trial court would have seen that the prosecution had insufficient evidence to support the charges, that the evidence was obtained without probable cause, and the identification was improper and suggestive.  He further argued that counsel failed to pursue review of the trial court's denial of his motion to quash the multiple bill.  He suggested that counsel may have lied about filing such a motion, since no such motion

appears in the record.  He also argued that counsel was ineffective for failure to seek reconsideration of the sentence and for failure to file a timely appeal.

In support of the third claim challenging the multiple offender proceeding, Laurent argued that counsel failed to investigate the grade of the predicate offense, assault of a police officer.  He claimed that the offense was prosecuted against him as a misdemeanor, because he was not imprisoned in the custody of the Louisiana Department of Corrections.  He further claimed that when he served his sentence in the parish jail, this changed the character of the offense from a felony to a misdemeanor, which could not be used to enhance his current sentence under the habitual offender laws.

On July 7, 2008, the state trial court denied relief, finding that Laurent failed to prove grounds for which relief could be granted under La. Code Crim. P. arts. 930.3, 930.2, and 929.[17]  The trial court subsequently denied Laurent's request to reconsider this ruling.[18]

---

[17]St. Rec. Vol. 2 of 3, Reasons for Judgment, 7/7/08.

[18]St. Rec. Vol. 2 of 3, Motion for Rehearing, 12/8/08 (dated 12/1/08); Trial Court Order, 12/23/08.

Laurent later sought review of the trial court's order in the Louisiana First Circuit with respect to only the first two claims, insufficient evidence and ineffective assistance of counsel.[19]  The court denied relief without stated reasons on April 27, 2009.[20]

Laurent promptly filed a writ application in the Louisiana Supreme Court seeking review of the appellate court's ruling on the sufficiency of the cocaine evidence.[21]  While this writ application was pending, Laurent filed a motion for new trial in the state trial court.[22]  The court denied the motion as untimely on August 19, 2009.[23]  The Louisiana First Circuit also denied the related writ application, citing La. Code Crim. P. art. 853 on October 26, 2009.[24]

Laurent then submitted a second application for post-conviction relief to the state trial court on September 2, 2009, raising what he described as the following "new and

---

[19]St. Rec. Vol. 1 of 6, 1st Cir. Writ Application, 2009-KW-0017, 1/2/09 (dated 1/1/09); see St. Rec. Vol. 2 of 6, Motion for Intent to Take-up Writs, 11/26/08 (dated 11/24/08); Trial Court Order, 12/9/08 (giving Laurent to January 8, 2008 to file writ application).

[20]St. Rec. Vol. 2 of 6, 1st Cir. Order, 2009-KW-0017, 4/27/09.

[21]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 09-KH-1116, 5/20/09 (postmarked 5/6/09).

[22]St. Rec. Vol. 2 of 6, Motion for New Trial, 7/27/09.

[23]St. Rec. Vol. 2 of 6, Trial Court Order, 8/19/09.

[24]St. Rec. Vol. 1 of 6, 1st Cir. Writ Application, 2009-KW-1645, 9/3/09 (dated 9/2/09); St. Rec. Vol. 2 of 6, 1st Cir. Order, 2009-KW-1645, 10/26/09.

different claims:"[25] (1) He was denied due process, the evidence was insufficient and/or tainted. (2) Counsel gave ineffective assistance.  Specifically, Laurent alleged that the State failed to produce the alleged $40 that exchanged hands when the powder cocaine could not be located.  He also argued that the alleged $40 paid for the cocaine was different from its value of $60 given in the police report.  He again claimed that the powder cocaine used at his trial was from a transaction between police and Monroe Laurent in which he was not involved.  He argues that this confused the jury, and no corrective instruction was given.  Laurent further argued that the State never produced the alleged cocaine, because it did not exist.  Laurent also asserted that the State knowingly used perjured testimony from the officers at trial.  Laurent further argued that the state withheld favorable evidence against him in violation of <u>Brady</u>,[26] including the testimony of Monroe Laurent, and in failing to produce the correct cocaine.

In his second claim, Laurent again challenged the effectiveness of his counsel in that counsel failed to (1) investigate the officers' testimony, the missing cash, the value of the cocaine and the source of the cocaine used against him at trial; (2) challenge the evidence at trial and failed to object to the errors at trial, including false testimony and

---

[25]St. Rec. Vol. 2 of 6, Memorandum in Support of Application for Post-Conviction Relief, p. 2, 9/4/09 (dated 9/2/09).

[26]In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held the prosecution's suppression of evidence favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

false evidence; (3) object to the late amendment of the bill of information; (4) pursue discovery; (5) take any action to challenge the sufficiency of the evidence after trial; (6) move to exclude and object to the evidence; (7) move for a new trial to preserve claims for appeal; (8) object to hearsay evidence and the denial of the right to confront Monroe Laurent; (9) object to the specific counts in the bill of information.

On November 2, 2009, the state trial court issued an order dismissing the application as repetitive in violation of La. Code Crim. P. art. 930.4.[27]  The Louisiana First Circuit denied Laurent's related writ application without stated reasons.[28]

Laurent thereafter submitted a supplemental memorandum to the Louisiana Supreme Court, in connection with his pending writ application submitted to that court on May 6, 2009, requesting that the court also review the lower court orders denying his second application for post-conviction relief as repetitive.[29]  The Louisiana Supreme Court denied the application on March 12, 2010, without stated reasons.[30]

---

[27]St. Rec. Vol. 2 of 6, Trial Court Order, 11/2/09 (filed 11/3/09).

[28]St. Rec. Vol. 1 of 6, 1st Cir. Writ Application, 2009-KW-2130, 11/17/09 (dated 11/16/09); St. Rec. Vol. 2 of 6, 1st Cir. Order, 2009-KW-2130, 2/1/10.

[29]The State failed to produce a copy of this supplemental memorandum.  A member of my staff obtained a copy from the office of the clerk of the Louisiana Supreme Court on October 25, 2010.

[30]State ex rel. Laurent v. State, 28 So.3d 1020 (La. 2010); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2009-KH-1116, 3/12/10; see Rec. Doc. No. 1, p. 64 (letter from Louisiana Supreme Court's Central Staff to allow supplemental memorandum).

II.    <u>FEDERAL HABEAS PETITION</u>

On April 22, 2010, the clerk of this court filed Laurent's petition for federal habeas corpus relief, in which he raises four grounds for relief:[31] (1)(a) The evidence was insufficient to support the conviction and (b) the sentence imposed was excessive. (2) The conviction and sentence were obtained in violation of the Constitution. (3) The prosecution failed to disclose evidence, the testimony of Monroe Laurent, which was favorable to the defendant in violation of <u>Brady</u>. (4) Counsel provided ineffective assistance.

The State filed an answer and memorandum in response to Laurent's petition, alleging that Laurent's claims were without merit.[32]  Laurent filed a traverse to the State's opposition memorandum, arguing that the State failed to recognize and address many of his arguments, which he argues have merit.

III.    <u>GENERAL STANDARDS OF REVIEW</u>

AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[33] and applies to habeas

---

[31]Rec. Doc. No. 1, pp. 4-5.

[32]Rec. Doc. Nos. 9, 10.

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Laurent's petition, which, for reasons discussed below, is deemed filed in this federal court on April 1, 2010.[34]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The record supports the State's conclusions that Laurent timely filed his federal petition and that his claims were exhausted through the state courts.  The State did not address the issue of procedural default.

---

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Laurent's petition was filed by the clerk of court on April 22, 2010, when the filing fee was received.  Laurent dated his signature on the petition on April 1, 2010, which I consider the earliest date he could have submitted it to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

A review of the record reflects that the state courts barred review of Laurent's claims and arguments raised in his second application for post-conviction relief as repetitive in violation of La. Code Crim. P. art. 930.4.  I will address sua sponte the procedural default of those claims before proceeding to the merits of the claims properly before this Court.

IV.   <u>PROCEDURAL DEFAULT</u>

As outlined above, in his second application for post-conviction relief, Laurent presented "new and different" arguments in support of his on-going challenge to his conviction.  As noted above, on November 2, 2009, the state trial court barred review of the application pursuant to La. Code Crim. P. art. 930.4.  This was the last reasoned decision on this claim by the state courts.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).  For the following reasons, the arguments raised in that application that are also raised in this federal petition are procedurally barred and may not be addressed by this court.[35]

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim.  <u>Nobles</u>, 127 F.3d at 420.  This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is

---

[35]The specific barred claims are outlined later in this section.

being considered.  Fisher v. Texas, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Magouirk, 144 F.3d at 348.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.  The last reasoned

15

decision of the state trial court relied on La. Code Crim. P. art. 930.4 to deny relief and dismiss Laurent's second post-conviction application, recognizing that Laurent had raised a previous application which had already been denied.

Under La. Code Crim. P. art. 930.4(E), "a successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application." Laurent repeatedly indicated to the state courts that his second application raised new and different claims to challenge his conviction.[36]

A.    INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.   A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902.

La. Code Crim. P. art. 930.4(E) is clearly an independent state law procedural ground for denying review of an improperly raised post-conviction claim.  LeBlanc v. Cain, No. 05-4058, 2006 WL 2849856, at *5 (E.D. La. Sep. 29, 2006) (report and

---

[36]St. Rec. Vol. 2 of 6, Memorandum in Support of Application for Post-Conviction Relief, p. 3, 9/4/09 (dated 9/2/09); St. Rec. Vol. 1 of 6, 1st Cir. Writ Application, 2009-KW-2130, pp. 2, 4, 11/17/09 (dated 11/16/09); Rec. Doc. No. 12, Supplemental Memorandum, No. 09-KH-1116, 9/24/10.

recommendation adopted by order) (Article 930.4(E) is independent and adequate); Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, No. 98-0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Article 930.4 is independent and adequate).

A state procedural bar is presumptively adequate when the state court expressly and regularly relies on it in deciding not to review a claim for collateral relief.  Glover, 128 F.3d at 902.  The state court in this case expressly ruled that Laurent was not entitled to review of his successive application.  I find that the bar imposed under La. Code Crim. P. art. 930.4 in this case is both independent and adequate to bar review of the merits of Laurent's claims.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  Glover, 128 F.3d at 902 (citing Coleman, 501 U.S. at 731-32); Amos, 61 F.3d at 338-39 (citing Harris, 489 U.S. at 262; Engle v. Isaac, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the

state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>., 477 U.S. at 486.

In this case, Laurent has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  My review of the record, including his state court pleadings, does not support a finding that any factor external to the defense prevented him from raising this claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Laurent's claims and arguments presented in his second state application and raised in this case are therefore procedurally barred from review by this federal habeas corpus court.  <u>See</u> <u>Trest v. Whitley</u>, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review

precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[37]

## C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Laurent may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural

---

[37]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Laurent does not provide any indication and the record contains nothing that suggests his actual innocence on the underlying convictions. On the contrary, the evidence of his guilt was substantial, as discussed later in this report. His claims for relief address alleged errors in the criminal proceedings. He presents no new evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court. For these reasons, Laurent has failed to overcome the procedural bar.

Therefore, the following claims and arguments raised in this federal petition are procedurally barred from review and must be dismissed with prejudice for that reason. In support of Laurent's second claim in this court – that his conviction was unconstitutionally obtained – the barred arguments are: (1) The state trial court erred in allowing the photographic identification to be used at trial. (2) The State used tainted evidence or had no evidence of the money exchanged or of the powder cocaine to support the charges against him. (3) The State knowingly used the perjured testimony of the detectives. In addition, the portion of Laurent's third claim alleging that the prosecution failed to disclose evidence, the testimony of Monroe Laurent, which was favorable to the defendant in violation of Brady, is also procedurally barred. The following arguments in support of his ineffective assistance of counsel claim are also barred from federal

review:  Counsel failed to (1) investigate the officers' testimony, the missing cash, and the source of the cocaine used against him at trial; (2) object to errors at trial, including false testimony and false evidence; (3) object to late amendment to the bill of information; (4) file a motion for new trial; (5) object to hearsay evidence and the State's denial of his right to confront Monroe Laurent; (6) object to specific counts in the bill of information.

## V.   STANDARDS OF A MERITS REVIEW

Some of Laurent's claims are not procedurally defaulted.  As to these claims, amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

21

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.   INSUFFICIENT EVIDENCE (CLAIM ONE, PART A)

In his first claim, Laurent alleges that the State failed to prove that he was the

individual who committed the charged crimes and that he had actual or constructive

possession of the drugs found in the van.  Laurent first challenged the sufficiency of the

identification evidence on direct appeal.  His counsel argued that the evidence was

insufficient to negate the possibility of misidentification based on Laurent's prior

involvement with area police and to prove actual or constructive possession of the

cocaine in the van.  Counsel also noted discrepancies in the testimony regarding the

transaction dates and the dollar value of the cocaine at issue.

In addressing his challenge to the identification, the Louisiana First Circuit

considered all of the evidence supporting the conviction.  The court found the evidence

sufficient to establish that Laurent was the "Lonnie" involved in the transaction and to

support the verdict on all charges.  This was the last reasoned opinion on these issues.

Laurent reiterated his arguments in his first application for post-conviction relief. He argued to the state trial court that he was supposed to be on trial for distributing powder cocaine, which was never analyzed or proven to be cocaine in a sufficient quantity to support the charges.  He also argued that the evidence was insufficient to prove that he possessed the cocaine or that it was in a sufficient quantity to establish an intent to distribute.

The state trial court denied the application, citing La. Code Crim. P. arts. 930.3, 930.2, and 929.  This was the last reasoned opinion on these issues.

The well-established legal standard for considering sufficiency of the evidence is found in Jackson v. Virginia, 443 U.S. 307 (1979).  Under Jackson, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).  To determine whether the commission of a crime is adequately supported by the record, the court must  reference the substantive elements of the crime as defined by state law.  Alexander v. McCotter, 775 F.2d 595, 597-98 (5th Cir. 1985); Turner v. McKaskle, 775 F.2d 999, 1001 (5th Cir. 1983).  The court's consideration of the sufficiency of

evidence extends only to what was presented at trial.  <u>Guzman</u>, 934 F.2d at 82 (citing

<u>Tyler v. Phelps</u>, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Review of the sufficiency of evidence, however, does not include review of the

weight of the evidence or the credibility of the witnesses, as those determinations are the

exclusive province of the jury.  <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th

Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993); <u>see also</u>

<u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts.").  Thus, all credibility choices and conflicting inferences are to

be resolved in favor of the verdict.  <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

The reviewing court is not authorized to substitute its interpretation of the evidence for

that of the fact-finder.  <u>Alexander</u>, 775 F.2d at 598.

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Maes</u>

<u>v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine

whether the state courts' denial of relief was contrary to or an unreasonable application

of United States Supreme Court precedent.

A.     <u>IDENTIFICATION</u>

Laurent first challenges the evidence necessary to establish that <u>he</u> was the person

involved in the charged drug transactions.  He argues that the evidence identifying him

as the perpetrator was purely circumstantial and not enough to establish that he was the "Lonnie" involved in the cocaine transactions. He contends that Louisiana circumstantial evidence law requires that the evidence exclude every possibility that he was the perpetrator, and the evidence in his case does not meet that standard.

Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as the perpetrator. State v. Draughn, 950 So.2d 583, 593 (La.), cert. denied, 552 U.S. 1012 (2007); State v. Ingram, 888 So.2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification.  Id.  In addition, in Louisiana, "[t]he rule as to circumstantial evidence is:  assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438.

On federal habeas corpus review, however, the court does not apply these state law "reasonable hypothesis" standards, but must apply the federal standard announced in Jackson in a manner consistent with the AEDPA standard of review.[38]  Gilley, 968 F.2d

---

[38]Louisiana's circumstantial evidence rule "is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test . . . .  Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997).  The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails."  State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d at 208.

at 467 (citing <u>Schrader v. Whitley</u>, 904 F.2d 282, 284 (5th Cir. 1990)). In applying the

appropriate standard, I have reviewed the transcripts and find the evidence of the crimes

and identification sufficient to support the verdict.

B.   ATTEMPTED DISTRIBUTION OF COCAINE ON MAY 5, 2004

Johnson was convicted under La. Rev. Stat. Ann. §§ 40:967(A)(1) and 40:979[39]

of attempted distribution of a controlled dangerous Schedule II substance, <u>i.e.</u> cocaine.[40]

Louisiana defines "attempt" in La. Rev. Stat. Ann. § 14:27:

> A.   Any person who, having a specific intent to commit a crime, does or
> omits an act for the purpose of and tending directly toward the
> accomplishing of his object is guilty of an attempt to commit the offense
> intended; and it shall be immaterial whether, under the circumstances, he
> would have actually accomplished his purpose.
> B.   Mere preparation to commit a crime shall not be sufficient to
> constitute an attempt; but lying in wait with a dangerous weapon with the
> intent to commit a crime, or searching for the intended victim with a
> dangerous weapon with the intent to commit a crime, shall be sufficient to
> constitute an attempt to commit the offense intended.
> C.   An attempt is a separate but lesser grade of the intended crime; and
> any person may be convicted of an attempt to commit a crime, although it
> appears on the trial that the crime intended or attempted was actually
> perpetrated by such person in pursuance of such attempt.

---

[39]La. Rev. Stat. Ann. § 40:979(A) is the applicable sentencing provision for Laurent's crime:
A. Except as otherwise provided herein, any person who attempts or conspires to commit
any offense denounced and/or made unlawful by the provisions of this Part shall, upon
conviction, be fined or imprisoned in the same manner as for the offense planned or
attempted, but such fine or imprisonment shall not exceed one-half of the longest term
of imprisonment prescribed for the offense, the commission of which was the object of
the attempt or conspiracy.

[40]Cocaine is a Schedule II drug pursuant to La. Rev. Stat. Ann. § 40:964.

Under La. Rev. Stat. Ann. §§ 40:967(A)(1) and 14:27, the State was required to prove that Laurent knowingly or intentionally attempted to distribute cocaine.  State v. Rogers, 850 So.2d 838, 842 (La. App. 5th Cir. 2003) (citing State v. Alexander, 753 So.2d 933, 936 (La. App. 4th Cir. 2000), writ denied, 790 So.2d 2 (La. 2001)). Distribution of cocaine requires proof of only a general criminal intent, which can be established by mere proof of voluntary distribution.  State v. Chatman, 599 So.2d 335, 345 (La. App. 1st Cir. 1992) (citing State v. Banks, 307 So.2d 594, 596 (La. 1975), State v. Williams, 352 So.2d 1295, 1296 (La. 1977)).  Thus, a person is guilty of distribution of cocaine when he voluntarily transfers, or in this case attempts to transfer, possession or control of the cocaine to his intended recipient.  State v. McGee, 757 So.2d 50, 58 (La. App. 4th Cir. 2000), writ denied, 772 So.2d 121 (La. 2000), cert. denied, 535 U.S. 969 (2002.  Thus, the State must show (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance.  State v. Johnson, 825 So.2d 1230, 1233 (La. App. 4th Cir. 2002), writ denied, 834 So.2d 437, 438 (La. 2003); see also, State v. Young, 839 So.2d 186, 193 n.7 (La. App. 4th Cir.), writ denied, 855 So.2d 756 (La. 2003).

The term "distribute" means "to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a

practitioner." La. Rev. Stat. Ann. § 40:961(14). A person is a "distributor" when he "delivers a controlled dangerous substance." La. Rev. Stat. Ann. § 40:961(15).

As used in these statutes, the terms "deliver" and "delivery" are defined as the transfer of a controlled dangerous substance whether or not there exists an agency relationship. La. Rev. Stat. Ann. § 40:961(10). Louisiana case law has defined "deliver" as the transferring of possession or control. State v. Martin, 310 So.2d 544, 546 (La. 1975). The distribution or transfer of possession or control is not limited, however, to a physical transfer between the culpable parties. State v. Chatman, 599 So.2d at 346 (citing State v. Gentry, 462 So.2d 624, 627 (La. 1985)). Distribution may be accomplished by the imposition of a third party into the transaction. Id.

The jury heard testimony from Detectives Justin Gibson and Nicholas Powell about the undercover operation involving Monroe and Lonnie Laurent. The testimony and evidence indicated that Gibson was introduced to Monroe Laurent by an informant to facilitate drug buys.[41] On May 5, 2004, Gibson met with Monroe Laurent at his residence to discuss a cocaine purchase.[42] He was there alone, with a cover team within

---

[41]St. Rec. Vol. 5 of 6, Trial Transcript Volume II (continued), p. 259 (Gibson), p. 325 (Powell), 5/2/06.

[42]St. Rec. Vol. 4 of 6, Trial Transcript Volume II, p. 243 (Gibson), 5/2/06.

radio but not visual range.[43]  Gibson had a radio transmitter and digital recorder on his

person.[44]  He was provided with $100 to purchase crack cocaine from Monroe, and he

bought $60 worth.[45]  He asked Monroe about purchasing powder cocaine.[46]  Monroe

called over his cousin, a younger man named "Lonnie," who said he could get the

powder cocaine.[47]  Monroe walked off while Gibson discussed the purchase with

Lonnie.[48]  Gibson gave Lonnie $40, and Lonnie rode off on a bicycle down a path in

woods near the house.  Monroe reappeared and spoke with Gibson while he waited for

Lonnie to return.[49]  When Lonnie returned, he told Gibson that his source for powder

cocaine was out.  Lonnie returned the $40 to Gibson.[50]  Compact discs of the digital

---

[43]Id., p. 241 (Gibson).

[44]Id., pp. 241-243 (Gibson).

[45]Id., pp. 245-46 (Gibson).

[46]Id., p. 246 (Gibson).

[47]Id., pp. 246-47 (Gibson).

[48]Id., p. 247 (Gibson).

[49]St. Rec. Vol. 5 of 6, Trial Transcript Volume II (continued), p. 251 (Gibson) 5/2/06.

[50]Id., p. 252 (Gibson).

audio recording of the conversations among Gibson, Monroe and Lonnie were played for the jury at trial.[51] Gibson identified the voices of Monroe and Lonnie on the recording.[52]

Gibson later identified this Lonnie as the same Lonnie from whom he would later buy drugs on June 4, 2005.[53]  During the course of the investigation, Lieutenant William Hart suggested that Monroe's cousin, Lonnie, could have been Lonnie Laurent.[54]  After Gibson identified Lonnie as his supplier during the mass arrest on June 4, 2004, the match of the face and the name occurred when Gibson recognized Lonnie Laurent's picture on June 7, 2004.[55]  Gibson also identified the defendant in the courtroom at trial.[56] Lonnie Laurent admitted that he was at Monroe's trailer that day, but he denied involvement in a drug transaction.[57]

Considering the evidence in the light most favorable to the prosecution, a rational jury could easily conclude that the Lonnie involved in the drug transaction on May 5, 2004, was Lonnie Laurent and that Lonnie Laurent knowingly and intentionally

---

[51]Id., pp. 256-266 (Gibson).

[52]Id., pp. 259, 264, 266 (Gibson).

[53]Id., pp. 249-251, 255 (Gibson).

[54]Id., pp. 353-54 (Powell).

[55]Id., pp. 268, 276, 281 (Gibson), pp. 353-54, 357 (Powell).

[56]Id., p. 244 (Gibson).

[57]Id., p. 392 (Lonnie Laurent).

31

participated in the attempted delivery of drugs to Detective Gibson.  Laurent accepted

$40 from Gibson and went off to retrieve powder cocaine, but he was unable to, so

Laurent returned the cash to Gibson.  Louisiana law did not require that Laurent complete

the transaction or physically hand the drugs to Gibson.  His efforts to do so were

sufficient to establish that he acted in a manner sufficient to accomplish the sale. The jury

apparently did not find Laurent's denial of his involvement credible. That decision is

wholly within its discretion.

For these reasons, the state court decision finding sufficient evidence was not

contrary to or an unreasonable application of Supreme Court precedent.  Petitioner's

claim for federal habeas relief thus has no merit.

C.   DISTRIBUTION OF COCAINE ON JUNE 4, 2004

Laurent also was convicted under La. Rev. Stat. Ann. § 40:967(A)(1), distribution

of cocaine, on June 4, 2004.  Under this provision, as outlined above, the State was

required to prove that Laurent knowingly or intentionally distributed cocaine to Gibson.

State v. Rogers, 850 So.2d at 842.

The jury was presented with the testimony of Detectives Gibson and Powell about

the undercover operation involving Monroe and Lonnie Laurent on June 4, 2004.

Gibson, again with a cover team, radio transmitter and digital recorder, went to Monroe

Laurent's residence to make another purchase of cocaine.[58]  He did not see Monroe, so he looked for him.  He came upon Lonnie, the same man he dealt with on May 5, 2004, sitting in a disabled van smoking crack cocaine with a homemade pipe.  The van was located on Monroe's property and was used as a hangout.[59]

Gibson talked to Lonnie about buying cocaine.[60]  Lonnie was about to get Gibson crack cocaine when Monroe walked up.  Monroe remembered that Gibson preferred powder cocaine.  Gibson then asked Lonnie for $60 worth of powder cocaine.  Lonnie said he could get it, so Gibson gave him the money.  Lonnie left and returned with powder cocaine, which he handed to Gibson.  The parties stipulated that the substance sold to Gibson was in fact cocaine.[61]

Gibson testified that, although Monroe was present, the exchange of money and drugs was with Lonnie.[62]  Gibson handed the cocaine and the digital recorder to Detective Powell immediately after the transaction.[63]  Powell packaged and maintained control of the cocaine until it was released to the lab for testing.  The cocaine was valued

---

[58]St. Rec. Vol. 5 of 6, Trial Transcript Volume II (continued), pp. 252-53 (Gibson), 5/2/06.

[59]Id., pp. 253, 255 (Gibson).

[60]Id., p. 254 (Gibson).

[61]Id., p. 341 (Powell).

[62]Id., p. 265 (Gibson).

[63]Id., pp. 327-333 (Powell).

in the police report at $40 after it was weighed, even though Laurent paid $60 to Lonnie.[64]

A compact disc of the digital audio recording of the conversations between Gibson, Monroe and Lonnie was played for the jury at trial.[65] Gibson identified the voices of Monroe and Lonnie on the recording.[66] Gibson later identified this Lonnie as the same Lonnie from whom he tried to purchase drugs on May 5, 2004.[67] The testimony also established that Gibson verified that the Lonnie with whom he dealt was in fact Lonnie Laurent.[68] He identified him at the scene of the mass arrest and again in the photograph presented to him on June 7, 2004. Lonnie Laurent testified that he could not recall being at Monroe's residence on June 4, 2004, or being arrested on that day on the property.[69]

Considering the evidence in the light most favorable to the prosecution, a rational jury could clearly conclude that the Lonnie involved in the drug transaction on June 4, 2004, was Lonnie Laurent and that Lonnie Laurent knowingly and intentionally delivered

---

[64]Id., pp. 346-47 (Powell).

[65]Id., pp. 264-266 (Gibson).

[66]Id., pp. 264, 266 (Gibson).

[67]Id., pp. 249-251, 255 (Gibson).

[68]Id., pp. 244, 268, 276, 281 (Gibson), pp. 353-54, 357 (Powell).

[69]Id., p. 394 (Lonnie Laurent).

powder cocaine to Detective Gibson.  Laurent accepted $60 from Gibson and actively retrieved the powder cocaine.  Laurent handed the cocaine to Gibson.

The state court decision finding sufficient evidence, therefore, was not contrary to or an unreasonable application of Supreme Court precedent.  Petitioner's claim for federal habeas relief thus has no merit.

## D.   POSSESSION WITH INTENT TO DISTRIBUTE COCAINE ON JUNE 4, 2004

Laurent was also convicted of possession with intent to distribute cocaine in violation of La. Rev. Stat. Ann. § 40:967(A) on June 4, 2004, in connection with the crack cocaine found in the van during the execution of the search and arrest warrants that same day.  To establish possession of a controlled dangerous substance, such as cocaine, with intent to distribute, the State is required to prove that the defendant knowingly and intentionally possessed the drug and that he did so with the intent to distribute it.  State v. Smith, 649 So.2d 1078, 1081 (La. App. 4th Cir. 1995).

Under Louisiana law, factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found in actual possession, his access to the area where drugs were found, evidence of recent drug use and his physical proximity to the drugs.  State v. Smith, 868 So.2d 794, 799 (La. App. 1st Cir. 2003).  The question of intent to distribute is a subjective one, which can be established

by evidence of prior sales by that defendant or at the same location.  <u>State v. Scott</u>, __ So.3d __, No. 2009-K-1658, 2010 WL 4137601, at *4 (La. Oct. 22, 2010) (citing <u>State v. Elzie</u>, 343 So.2d 712, 714 (La. 1977); <u>State v. Knighten</u>, 968 So.2d 720, 721 (La. 2007); <u>State v. Grey</u>, 408 So.2d 1239, 1241-42 (La. 1982)).   Intent may also be determined by the circumstances of the case, including whether (1) the defendant ever distributed or attempted to distribute the drug, (2) the drug was in a form usually associated with possession for distribution, (3) the amount of drug creating an inference of an intent to distribute, (4) expert or other testimony establishing that the amount of drug found in defendant's possession is inconsistent with personal use only, (5) any paraphernalia, such as baggies or scales, evidenced an intent to distribute.  <u>State v. Hearold</u>, 603 So.2d 731, 735 (La. 1992); <u>see also</u>, <u>State v. Scott</u>, 2010 WL 4137601, at *4.

The evidence and testimony at trial showed that Gibson had successfully purchased crack cocaine from Monroe on the same property.[70]  Earlier on June 4, 2004, Gibson spoke to Lonnie Laurent in the van about purchasing cocaine.  At the time, Lonnie was sitting in the van smoking crack.[71]  When Gibson asked to buy $60 worth of cocaine, Lonnie was prepared to sell him crack, but Monroe interrupted and recalled that

---

[70]St. Rec. Vol. 5 of 6, Trial Transcript Volume II (continued), pp. 245-46 (Gibson), 5/2/06.

[71]<u>Id</u>., pp. 253, 255 (Gibson).

36

Gibson preferred powder cocaine.[72]  Later, when Gibson returned to search the van, he retrieved a baggie of crack cocaine and a small scale used by street level dealers to weigh drugs for sale.  The drugs and scale were found in the van where Gibson had his last transaction with Lonnie Laurent.[73]  The testimony also showed that the cousins, Lonnie and Monroe, had an ongoing relationship of supplying and selling cocaine from the property with one or both in actual possession of the cocaine sold.

The jury, therefore, was presented with testimony and evidence that crack and drug paraphernalia were located where Lonnie Laurent had demonstrated his ability to sell Gibson $60 of crack cocaine and where he was in fact smoking crack when Gibson approached him. Under Louisiana law, these factors are sufficient to establish possession or dominion of the crack located in the van.  State v. Smith, 868 So.2d at 799.  The evidence was also sufficient to demonstrate under Louisiana law that Laurent had the requisite intent to distribute the crack located in the van.  State v. Hearold, 603 So.2d at 735; see also, State v. Scott, 2010 WL 4137601, at *4.

Considering the evidence in the light most favorable to the prosecution, a rational jury could easily conclude that Lonnie Laurent had actual or constructive possession with intent to distribute the crack cocaine seized from the van on Monroe Laurent's property.

---

[72]Id., p. 254 (Gibson).

[73]Id., pp. 273-75 (Gibson).

The state court decision finding sufficient evidence, therefore, was not contrary to or an unreasonable application of Supreme Court precedent. Petitioner's claim for federal habeas relief thus has no merit.

VII.   EXCESSIVE SENTENCE (CLAIM NO. ONE, PART B)

Laurent alleges that his sentence of 25 years as a second offender for distribution of cocaine was excessive. He also received ten years on each of the other convictions for attempted distribution of cocaine and possession with intent to distribute cocaine. He argues that the state trial court failed to consider "mitigating circumstances," such as his lesser role in the drug activity on Monroe Laurent's property and the fact that he was not in possession of any illegal drugs or weapons when he was arrested. Laurent raised this claim on direct appeal to the Louisiana First Circuit. The court held that the sentences were within the requisite range for each charge, including the 25-year sentence on the enhanced count, which was less than one-half of the maximum 60-year sentence. The court found no error in the sentences.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); Turner v. Cain, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). If a sentence is within the

statutory limits, a federal habeas court will not upset it, unless the sentence is grossly disproportionate to the gravity of the offense.  Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996);  McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

Laurent's sentences for attempted distribution and possession with intent to distribute and the enhanced sentence for distribution were each within the statutory ranges in place in Louisiana at the time of the crimes.  Louisiana law provides that a person convicted of attempted distribution of cocaine faced a sentencing range of one-half that available for distribution, two to 30 years, which exposed Laurent to a range from zero to fifteen years at hard labor.  State v. Rogers, No. , 2010 WL 1780254 (La. App. 3rd Cir. May 5, 2010) (citing La. Rev. Stat. Ann. § 14:27(D)(3) and § 40:967(B)(4)).  His actual sentence for this charge was 10 years at hard labor.

The sentencing range for possession with intent to distribute  cocaine is at least two years and not more than 30 years at hard labor, with the first two years of the sentence served without the benefit of parole, probation or suspension of sentence. La.

39

R.S. 40:967(B); State v. Robinson, 42 So.3d 1036 (La. App. 2d Cir. 2010).  Laurent's

actual sentence for this charge was 10 years.[74]

As a second offender with a prior violent crime conviction, Laurent faced a term

of imprisonment "not less than one-half the longest term and not more than twice the

longest term prescribed for a first conviction."  La. Rev. Stat. Ann. § 15:529.1.  Under

Louisiana law, a conviction for distribution of cocaine carries a term of imprisonment at

hard labor for not less than two years nor more than 30 years, with the first two years of

the sentence without benefit of parole, probation, or suspension of sentence.  La. Rev.

Stat. Ann. § 40:967(B)(4)(b).  Thus, Laurent faced an enhanced sentence on this charge

as a second offender of between 15 and 60 years in prison without benefit of parole,

probation, or suspension of sentence for the first two years of the sentence.  His actual

sentence was 25 years at hard labor without benefit of probation or suspension of

sentence.[75]

Because Laurent's sentences were within the statutory parameters, this federal

court considers proportionality when compared with sentences imposed in similar cases.

---

[74]Under Louisiana law, though the trial court did not include the withheld benefits in the sentence, the sentence is deemed as a matter of law to contain the required restriction.  State v. Wilson, 30 So.3d 149, 157 (La. App. 5th Cir. 2009) (citing La. Rev. Stat. Ann. § 15:301.1 and State v. Wiley, 880 So.2d 854, 871 (La. App. 5th Cir. 2004)).

[75]Under Louisiana law, though the trial court did not restrict the withheld benefits to the first two years as required, the sentence is deemed as a matter of law to contain the required restriction.  State v. Wilson, 30 So.3d at 157.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  Ewing v. California, 538 U.S. 11, 23 (2003) (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.  Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).  As noted above, disproportionality is judged by whether similar sentences have been imposed for the same offense.  Smallwood, 73 F.3d at 1346-47.

I first note that, contrary to Laurent's allegations, the sentencing judge stated on the record that he considered the sentencing guidelines under La. Code Crim. P. art. 894.1, which includes the mitigating factors he addresses in his petition.[76]  Having done so, the state trial court determined that there was an undue risk that during any suspended sentence or probation, Laurent would commit another crime, and that a lesser sentence would depreciate the seriousness of his crimes.  The state trial court determined that Laurent was in need of correctional treatment in a custodial environment through commitment to an institution.[77]

---

[76]St. Rec. Vol. 5 of 6, Multiple Bill Hearing Transcript, pp. 20-21, 6/30/06.

[77]Id.

Turning to proportionality, Louisiana courts at the time consistently approved imposition of a 10-year sentence, and longer terms, in similar cases for attempted distribution of cocaine.  See e.g., State v. McGee, 757 So.2d 50 (La. App. 4th Cir. 2000) (10 year sentence); State v. Cooper, 864 So.2d 892 (La. App. 2d Cir. 2004) (10 year sentence); State v. Rogers, No. 09-1351, 2010 WL 1780254, at *2 (La. App. 3d Cir. 2010) (10 year sentence); see also, State v. Andrews, 755 So.2d 361 (La. App., 2d Cir. 2000) (15 year sentence); State v. Cook, 981 So.2d 232 (La. App. 2d Cir. 2008) (15 year sentence).  The same is true for possession of cocaine, with intent to distribute.  State v. Sigue, 940 So.2d 812 (La. App. 3d Cir. 2006) (10 year sentence); State v. Murray, No. 2005-KA-2435, 2006 WL 3813747, at *1 (La. App. 1st Cir. 2006) (10 year sentence); State v. Taylor, 953 So.2d 974 (La. App. 2d Cir. 2007); State v. Ellis, 954 So.2d 916 (La. App. 2d Cir. 2007) (10 year sentence).

Laurent's remaining sentence was for 25 years as a second offender on the distribution of cocaine conviction.  Louisiana courts at the time consistently approved imposition of similar and longer sentences in cases for distribution of cocaine in a multiple offender setting.  State v. Tomlinson, 957 So.2d 196 (La. App. 5th Cir. 2007) (25 year sentence); State v. Griffin, No. 2009–423, 2009 WL 3162172, at (La. App. 1st Cir. Sep. 11, 1999) (25 year sentence); see also,  State v. Griffin, 984 So.2d 97 (La. App. 1st Cir. 2008) (30 year sentence); State v. Favors, No. 2009-KA-0041, 2009 WL

1655410, at *1 (La. App. 1st Cir. 2009) (30 year sentence); State v. Edwards, 42 So.3d

449 (La. App. 2d Cir. 2010) (28 year sentence).

Nothing Laurent has presented distinguishes his situation from the decisions cited

above in which similar and more onerous sentences were imposed on multiple offenders

for distribution of cocaine.  Considering this record, Laurent has not shown that his

sentences were grossly disproportionate to his crimes.

For these reasons, the state courts' finding that Laurent's sentences were not

excessive was not contrary to established Supreme Court case law, nor was it an

unreasonable application of Supreme Court precedent.  Laurent is not entitled to relief

on this claim.

## VIII.   UNFAIR TRIAL (CLAIM NO. TWO)

Laurent argues that his convictions were unconstitutional and he was denied a fair

trial because the state inflamed and confused the jury by relying on cocaine from

Monroe's case and by challenging his character during oral argument.  He also alleges

that he was denied the right of confrontation because the State did not call Monroe

Laurent to testify and instead relied on voices heard on the recording.  He also complains

that he was prejudiced because he was not arraigned on the amended bill of information.

Laurent raised these claims in his first application for post-conviction relief.  The state

trial court summarily denied the application for failure to prove his entitlement to relief. This was the last reasoned opinion on these issues.

Federal habeas courts address only violations of a constitutional magnitude, where the proceedings violate due process rendering the criminal proceeding fundamentally unfair. Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)

Denial of due process presents a mixed question of law and fact. Dickson v. Sullivan, 849 F.2d 403, 405-06 (9th Cir. 1988). Under the applicable standard of review, this court therefore must determine if the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

Laurent first alleges that the State inflamed and confused the jury by showing the crack Gibson purchased from Monroe. To the extent he complains that the crack was admitted into evidence, an evidentiary error in a state trial does not justify federal habeas corpus relief, unless it is of such magnitude as to constitute a denial of fundamental fairness under the Due Process Clause. Estelle v. McGuire, 502 U.S. 62, 67 (1991); Skillern v. Estelle, 720 F.2d 839 (5th Cir. 1983). Thus, to receive federal habeas relief, a petitioner must show that an erroneous admission of evidence is "material in the sense

of a crucial, critical, highly significant factor." Bailey v. Procunier, 744 F.2d 1166, 1169 (5th Cir.1984).

In this case, information and testimony regarding Monroe Laurent was relevant to explaining and completing the chain of custody of the drugs purchased by Gibson. It also served to establish why Gibson was at Monroe's trailer and how he came to interact with Lonnie Laurent. The crack purchased from Monroe was not a crucial or significant factor in addressing Lonnie Laurent's powder cocaine transactions or establishing his possession of other crack with intent to distribute.[78]

A further review of the record also reflects that the testimony elicited by the State was clear and distinct in describing this exhibit as crack cocaine purchased strictly from Monroe on May 5, 2005, before Gibson was even introduced to Lonnie. The record does not reflect that the jury was in any way confused, or the defense prejudiced, by the presentation of this evidence. Laurent has not established that the admission of the crack purchased from Monroe Laurent was erroneous or that it rendered his trial fundamentally unfair.

Laurent also argues that his trial was unfair because he was not able to confront Monroe about the voices on the recordings made by Gibson. The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the

---

[78]The other crack admitted into evidence was seized at the common arrest from the van.

accused shall enjoy the right ... to be confronted by the witnesses against him."  U.S.

Const. Amend. VI.   In <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), the Supreme Court

recognized that the Confrontation Clause, read literally, would require the exclusion of

any statement made by a declarant not present at trial, subject to some exceptions.  "In

short, the Clause envisions a personal examination and cross-examination of the witness,

in which the accused has an opportunity, not only of testing the recollection and sifting

of the conscience of the witness, but of compelling him to stand face to face with the jury

in order that they may look at him, and judge by his demeanor upon the stand the manner

in which he gives his testimony whether he is worthy of belief."  <u>Roberts</u>, at 63-64.

Later, the Supreme Court made clear that the Confrontation Clause is violated by

the admission of out-of-court "testimonial statements" unless the declarant is unavailable

and the defendant had a prior opportunity to cross-examine the declarant regarding the

statements.  <u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004).   The fact that the

statements would be otherwise admissible as an exception to the hearsay rule or under

other applicable laws of evidence is not controlling.  "Where testimonial statements are

at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the

one the Constitution actually prescribes: confrontation."  <u>Crawford</u>, 541 U.S. at 68-69.

Only testimonial statements cause the declarant to be a "witness" within the meaning of

the Confrontation Clause.  <u>Id</u>., at 51.  The testimonial character of the statement is what

separates it from other hearsay that, while subject to traditional limitations upon hearsay

evidence, is not subject to the Confrontation Clause.  Davis v. Washington, 547 U.S. 813,

821 (2006).  In Davis, 547 U.S. at 822, the United States Supreme Court explained, at

least in part, the difference between "nontestimonial" and "testimonial" statements:

> Without attempting to produce an exhaustive classification of all
> conceivable statements-or even all conceivable statements in response to
> police interrogation-as either testimonial or nontestimonial, it suffices to
> decide the present cases to hold as follows: Statements are nontestimonial
> when made in the course of police interrogation under circumstances
> objectively indicating that the primary purpose of the interrogation is to
> enable police assistance to meet an ongoing emergency.  They are
> testimonial when the circumstances objectively indicate that there is no
> such ongoing emergency, and that the primary purpose of the interrogation
> is to establish or prove past events potentially relevant to later criminal
> prosecution (emphasis added).

In this case, Laurent challenges the recorded statements attributed to Monroe and

himself during the undercover drug transactions at Monroe's trailer. These were not

testimonial statements as defined by the Supreme Court, and the Confrontation Clause

does not apply.  The recordings were not obtained by police interrogation or presented

in testimonial form.  Instead, these are simply recordings of conversations among

Gibson, Monroe and Lonnie during the on-going uncover operation.  This does not fit the

definition of testimony adopted by the Supreme Court.

> The answer to the first question was suggested in Crawford, even if
> not explicitly held:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S., at 51, 124 S.Ct. 1354.

A limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its "core," but its perimeter.

We are not aware of any early American case invoking the Confrontation Clause or the common-law right to confrontation that did not clearly involve testimony as thus defined. Well into the 20th century, our own Confrontation Clause jurisprudence was carefully applied only in the testimonial context. See, e.g., Reynolds v. United States, 98 U.S. 145, 158, 25 L.Ed. 244 (1879) (testimony at prior trial was subject to the Confrontation Clause, but petitioner had forfeited that right by procuring witness's absence); Mattox v. United States, 156 U.S. 237, 240-244, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (prior trial testimony of deceased witnesses admitted because subject to cross-examination); Kirby v. United States, 174 U.S. 47, 55-56, 19 S.Ct. 574, 43 L.Ed. 890 (1899) (guilty pleas and jury conviction of others could not be admitted to show that property defendant received from them was stolen); Motes v. United States, 178 U.S. 458, 467, 470-471, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (written deposition subject to cross-examination was not admissible because witness was available); Dowdell v. United States, 221 U.S. 325, 330-331, 31 S.Ct. 590, 55 L.Ed. 753 (1911) (facts regarding conduct of prior trial certified to by the judge, the clerk of court, and the official reporter did not relate to defendants' guilt or innocence and hence were not statements of "witnesses" under the Confrontation Clause).

(footnote omitted) Davis, 547 U.S. at 823-825.

48

This record discloses nothing to suggest that the digitally recorded conversations during the covert drug transactions were intended by Gibson or Monroe or Lonnie Laurent to be testimonial under the foregoing definition.  Laurent has failed to establish that the Confrontation Clause was invoked by Monroe's statements on the recordings played for the jury.  These statements do not fit the definition of testimony subject to the Confrontation Clause.

Finally, Laurent suggests that his criminal proceedings were unfair because he was never arraigned on the amended bill of information used at trial.  The record reflects that on March 22, 2005, the State filed the amended bill of information used at Laurent's trial.[79]  The records from that date forward do not specifically indicate that an arraignment was conducted.  The state trial court, however, indicated prior to trial that Laurent had entered a plea of not guilty to the amended bill of information.[80]

The law is well established that formal arraignment is not constitutionally required if it is shown that the defendant knew what he was accused of and is able to defend himself adequately.  Dell v. Louisiana, 468 F.2d 324, 325 (5th Cir. 1972).  In this case, the record reflects that Laurent entered a not guilty plea to the original bill of information

---

[79]St. Rec. Vol. 3 of 6, Amended Bill of Information, 11/30/05.

[80]St. Rec. Vol. 4 of 6, Trial Transcript Vol. II, p. 213, 5/2/06.

charging him with distribution of cocaine on May 5, 2004 and June 4, 2005.[81]  The bill of information was amended on March 22, 2005, to charge him with attempted distribution of cocaine on May 5, 2004, distribution of cocaine on June 4, 2004 and possession with intent to distribute cocaine on June 4, 2004.[82]  When the state trial court reconsidered his bond September 27, 2005, the court recognized the possession with intent to distribute charge in its minute entry.[83]  The record shows that Laurent and his counsel were well aware of the charges against him and his counsel was prepared to defend against each of the charges.

For the reasons discussed above, the state courts' denial of relief on Laurent's due process and unfair trial claims, including prejudice before the jury, violation of the Confrontation Clause, and no arraignment, was not contrary to established Supreme Court case law or an unreasonable application of Supreme Court precedent.  Laurent is not entitled to relief on these claims.

IX.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 4)</u>

Laurent presents a laundry list of arguments to suggest that his counsel's performance was ineffective and prejudicial.  The state trial court summarily denied relief

---

[81]St. Rec. Vol. 3 of 6, Minute Entry, 9/10/04.

[82]St. Rec. Vol. 3 of 6, Amended Bill of Information, 3/22/05.

[83]St. Rec. Vol. 3 of 6, Minute Entry, 9/27/05.

on this claim for failure to prove entitlement to relief.  The Louisiana First Circuit and the Louisiana Supreme Court both subsequently denied the related writ applications without further comment.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in  Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice.  Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim

51

based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

In this case, the record reflects that Laurent's counsel diligently challenged the testimony of the State's witnesses with thorough cross-examination.  Counsel presented argument and questions, including Laurent's testimony, tending to raise doubt as to whether Lonnie Laurent was the person interacting with Gibson and challenging the accuracy of the police reports.  The fact that counsel's efforts were not successful does not render his performance unconstitutionally deficient.  See Martinez v. Dretke, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or

omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted). Contrary to Laurent's arguments, success is not the standard by which this court must evaluate his counsel's performance.

Laurent claims that his counsel failed to investigate the voices on the tapes or to interview and subpoena Monroe Laurent to ask him about who was present at the drug transactions.  He adds that his counsel failed adequately to challenge the identification evidence.  The record reflects that the police report and testimony identified the voices on the tapes as those of Monroe and Lonnie Laurent.  This description was not based strictly on the assumption of the police as to the identity of the particular "Lonnie" involved.

Counsel presented Laurent's testimony to suggest that Monroe had another cousin named "Lonnie," and he questioned the officers about the commonality of the name Lonnie in the Lacombe area.  Counsel also questioned the officers as to how they ascertained the name Lonnie Laurent from simply meeting a man identified only as "Lonnie."  The record reflects that Detective Gibson was able to identify Lonnie Laurent at the arrest scene and he was able to confirm his identity with the photograph shown to him.

As for having Monroe present to testify, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy

54

and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)).   "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"   Williams v. Cockrell, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).

In this case, Monroe Laurent had already entered pleas of guilty to the charges in the same bill of information, including the charges at issue in Lonnie Laurent's trial. Counsel was well within the range of sound trial strategy in not calling a co-defendant to testify about the very charges to which that co-defendant had already pleaded guilty.

Laurent also alleges that counsel prejudiced his defense by failing to pursue pretrial motions to suppress, including a motion to suppress the identification.   The record reflects that motions to suppress were filed prior to the filing of the amended bill of information.[84]  The motions were repeatedly continued until finally either mooted by trial or in the case of the motion to suppress the identification, withdrawn by counsel. The record reflects that the decision to withdraw the motion to suppress was apparently

---

[84]St. Rec. Vol. 3 of 6, Motion to Suppress Identification, 1/7/05; Motion to Suppress Confession, 1/7/05; Motion to Suppress Evidence, 1/7/05.

made in chambers prior to trial and was memorialized at the close of trial.[85]  As discussed above, defense counsel actively challenged the identification evidence at trial.  The jury nevertheless accepted it.  Without some showing by Laurent that counsel's action was outside of the scope of his discretion and trial strategy, Laurent has failed to demonstrate a deficiency in his performance or prejudice arising from it.

Laurent also complains that counsel failed to request a preliminary examination in an effort to show the state trial court that the charges against him should not go forward.  This is based on the same arguments he asserts suggesting that counsel did not adequately investigate the circumstances of his arrest.  Specifically, Laurent claims that his arrest was without probable cause because he just happened to be on Monroe's property.  This is a curious argument in light of the fact that Laurent could not remember at trial any of the details of his arrest.

Laurent also claims that had counsel conducted a more thorough investigation, the state court would have thrown out the charges and found him not guilty before a trial could be held.  Other than the fact that he had to go to trial, Laurent has not suggested any prejudice or deficiency in counsel's failure to request a preliminary examination.  The record also demonstrates that his counsel was very familiar with the facts

---

[85]St. Rec. Vol. 5 of 6, Trial Transcript Vol. II (continued), p. 448, 5/2/06.

surrounding his arrest and used that information to question the officers and Laurent at trial.

Laurent further alleges that counsel failed to investigate the amount and value of drugs used at trial.  Again, the record belies this suggestion.  Much of counsel's questioning delved into the discrepancies between the dollar amounts stated in the testimony and those in the police reports.  Further, it was not the defense's burden to prove the amount and value of the cocaine seized to support the charges.

Laurent also complains that his counsel failed to seek review of denial of the motion to quash the multiple bill and/or that counsel lied about filing the motion to quash.  The record reflects that counsel filed an answer to the multiple bill in which he prayed that the multiple bill be quashed.[86]  The multiple bill proceeding nevertheless commenced.[87]  The trial court also filed written reasons in support of its adjudication.[88] It is not deficient performance for counsel not to seek review of a ruling with which he could find no basis to object.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998).

---

[86]St. Rec. Vol. 3 of 6, Answer to Multiple Bill, 6/8/06.

[87]St. Rec. Vol. 3 of 6, Multiple Bill Hearing Minutes, 6/30/06.

[88]St. Rec. Vol. 3 of 6, Reasons for Judgment, 7/17/06.

Laurent also argues that counsel erred in failing to file a motion to reconsider the sentences and to file a motion for appeal on his behalf.  As determined above, there was no basis for counsel to ask the court to reconsider Laurent's sentences, which were not excessive and which were otherwise proper and constitutional.  Counsel's failure to make a frivolous or baseless motion is not deficient performance falling below an objective level of reasonableness.  Green, 160 F.3d at 1037.  Furthermore, Laurent filed his own unsuccessful motion to reconsider and his counsel was able to challenge the sentences on appeal.  He can show no prejudice.

With regard to the motion for appeal, the record does not reflect that counsel made either an oral or written motion for leave to appeal.  Nevertheless, on October 9, 2006, another indigent defender filed an application for post-conviction relief requesting an out-of-time appeal and noting that Laurent's trial counsel was no longer with the indigent defender's office.  Nevertheless, Laurent has shown no prejudice.  He was granted leave to pursue the out-of-time direct appeal and suffered no prejudice from the delay.

For the foregoing reasons, Laurent has failed to establish that counsel's performance was deficient or prejudicial.  The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Strickland.  Laurent is not entitled to relief on this claim.

58

## RECOMMENDATION

It is **RECOMMENDED** that Lonnie Laurent's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[89]

New Orleans, Louisiana, this ___4th___ day of November, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[89]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

59